IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARGARET SCHWARTZ,                    )
                                      )
                Plaintiff,            )
                                      )
        v.                            )   C.A. No. 16-573 (MN)
                                      )
NANCY A. BERRYHILL, Acting            )
Commissioner of Social Security,      )
                                      )
                Defendant.            )

## <u>MEMORANDUM OPINION</u>

Gary C. Linarducci, New Castle, DE; Thomas D. Sutton, LEVENTHAL SUTTON & GORNSTEIN, Trevose, PA – attorneys for Plaintiff

Nora Koch, Regional Chief Counsel, Heather Benderson, Special Assistant United States Attorney SOCIAL SECURITY ADMINISTRATION, Office of the General Counsel, Philadelphia, PA – attorneys for Defendant.

January 7, 2019
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

# I.    INTRODUCTION

Plaintiff Margaret Schwartz ("Ms. Schwartz" or "Plaintiff") appeals the decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her claim for Social Security Disability Insurance benefits under Title II of the Social Security Act.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Pending before the Court are Plaintiff's motion and Defendant's cross-motion for summary judgment.  (D.I. 7, 9).  Plaintiff, Ms. Schwartz, seeks reversal of the "decision of the Commissioner and order an award of the benefits to which she is entitled or, in the alternative, [that the Court] remand her claim to the Commissioner for a proper determination."  (D.I. 8 at 1).   The Commissioner requests that the Court affirm the decision denying Plaintiff's claim for benefits. (D.I. 10 at 20).   For the reasons stated below, the Court will grant-in-part and deny-in-part Plaintiff's motion and deny Defendant's cross-motion for summary judgment.  This matter will be remanded for further proceedings.

# II.   BACKGROUND

## A.    Procedural History

On February 29, 2012, Ms. Schwartz filed an application for Disability Insurance Benefits under Title II, alleging disability beginning October 31, 2011.  (Tr. 26, 213-214).[1]  Plaintiff's claim was denied initially on December 20, 2012 and again upon reconsideration on May 23, 2013. (Tr. 121-124, 126-131).  Plaintiff then requested a hearing before the Administrative Law Judge ("ALJ") on July 29, 2013.  (Tr. 132-133).  The hearing took place on July 15, 2015 during which

---

[1]    References to "Tr." are to the "Transcript of Social Security Proceedings" filed on November 3, 2016.  (D.I. 5).

both Ms. Schwartz and Christina Cody ("Ms. Cody), an impartial vocational expert ("VE") testified. (Tr. 39-89). After the hearing, on August 24, 2015, the ALJ issued a decision finding that Plaintiff "has not been under a disability within the meaning of the Social Security Act from October 31, 2011, through the date of [the] opinion." (Tr. 17). Plaintiff requested review of the ALJ decision by the Appeals Council on October 23, 2015. (Tr. 8-9). On May 13, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7).

On July 5, 2016, Plaintiff filed suit in the District of Delaware seeking judicial review of the Commissioner's denial of benefits. (D.I. 1). The parties' completed briefing on the cross motions for summary judgment on April 14, 2017. (D.I. 7-10, 13).

**B.    Factual History**

Plaintiff applied for Disability Insurance Benefits on March 1, 2012 when she was 56 years old. (Tr. 213-14). Plaintiff became unable to work as of October 31, 2011 at the age of 56, which is "advanced age" as defined by 20 C.F.R. §404.1563(d). (Tr. 213). She is a high school graduate and completed specialized job training at the Court Reporting Institute in Philadelphia. According to her Work History report (Tr. 240-249), she had held jobs as a transcriptionist and a secretary[2] in the 18 years prior to becoming unable to work.

**1.    Disability Report – March 1, 2012 (Form SSA-16)**

In her Disability Report dated March 1, 2012 (Form SSA-16) (Tr. 213-214), Plaintiff asserted that she has the following physical or mental conditions that limit her ability to work (Tr. 251):

---

[2]    The Work History Report lists one of her positions as "Outpatient Physical Therapist." (Tr. 240), but during the hearing Ms. Schwartz confirmed that she worked as a secretary and transcriptionist. (Tr. 44).

1. Diabetes, osteoarthritis, depression, sleep apnea;

2. Type 2 Diabetes;

3. Fibromyalgia;

4. Osteoarthritis of knees;

5. Osteoarthritis of shoulders;

6. Osteoarthritis of hips;

7. Sleep apnea;

8. Depression;

9. High blood pressure; and

10. High cholesterol.

In her disability report, she indicates that she stopped working because of her conditions,[3] but that her conditions had not caused her to make changes to her work activity. (*Id.*). She also lists the following medications: Amaryl, Cymbalta, Janument, Lantus, Lipitor, Losartan, which were prescribed by Dr. James Lenhard at Christiana Care Diabetes and Metabolic Disease Center[4] and Dr. James Loughran at Concord Plaza Office Park. (Tr. 254). Plaintiff lists five providers in addition to Drs. Lenhard and Loughran who may have medical records about her physical and mental conditions: Dr. John Carlson, Drs. James Neman and Peter Rocca at Rheumatology Associates, Dr. James Purtill at Rothman Instititute and Dr. Brett Wharton. (Tr. 254-259).

---

[3]  Plaintiff testified that her most recent job as a transcriptionist for a physical therapy company had ended because "the therapist [sic] would input their own information into the computers so they didn't need to have it transcribed anymore." (Tr. 42).

[4]  The medical practice associated with Dr. Lenhard was called Christiana Care Endocrinology Specialists beginning in the records dated 2012.

## 2.    Medical History, Treatment, and Conditions

The Court has reviewed all medical records submitted. The relevant medical history begins in February of 2011 and continues through October 27, 2015. (D.I. 5-9 – 5-11, Exhs 1F – 19F).

### A.    Loughran Medical

James P. Loughran MD is listed as Plaintiffs primary care physician throughout the relevant time. His records contain copies of the records obtained from other medical providers described below. His notes from visits in during the relevant time period indicate that Plaintiff suffered from persistent knee pain. (Tr. 400-401, Tr. 469; Tr. 484-85; Tr. 493).

### B.    Christiana Care Endocrinology

Plaintiff saw Dr. James Lenhard, an endocrinologist, regularly during the relevant time. In October of 2011, Dr. Lenhard noted that Plaintiff suffered from diabetes, hypertension, hyperlipidemia, osteoarthritis, back pain, and depression. (Tr. 338-39). In follow up visits in 2012, he reviewed Plaintiff's bloodwork and condition. In February of 2012, he noted the same conditions previously stated. He also noted that her glycemic control had worsened, but that Plaintiff had lost weight and "is/was" walking 20 minutes a day, her "regular exercise includes walking" and she did not report leg pain when walking. (Tr. 381-85). In the same notes, however, he noted that Plaintiff does not exercise and that her osteoarthritis makes exercise difficult. (Tr. 383-84). In November of 2012, Dr. Lenhard noted that Plaintiff has had knee pain from osteoarthritis, that Dr. Rocca had suggested knee replacement surgery but that she was hesitant to have that surgery. (Tr. 377). He noted that her weight had increased since the prior visit and included the same notes about exercise that had been previously stated. (Tr. 377-380). Dr. Lenhard's notes from March of 2013 indicated an additional weight gain but were otherwise largely the same as the November 2012 report. (Tr. 402-405)

### C. Rheumatology Associates (Drs. James Neman and Peter Rocca)

Plaintiff was seen by Dr. Rocca., a board-certified rheumatologist, on multiple occasions: April 4, 2012 (Tr. 375-76); May 25, 2012 (Tr. 374); June 29, 2012 (Tr. 372-73); January 4, 2013 (Tr. 390-91); and July 12, 2013 (Tr. 438-39). In addition, Dr. Rocca obtained laboratory tests (Tr. 372) and an MRI of the lumbar spine (Tr. 392) and spoke to Ms. Schwartz by telephone between regularly scheduled office visits (Tr. 440, 444).

Dr. Rocca reported that he found tender points on examination and noted that they were "tender points characteristic of fibromyalgia" and that her pain is "in all four quadrants.". (Tr. 372-76, 390-95, 398-99, 434, 438, 442, 467). Dr. Rocca treated Plaintiff with Lyrica (Tr. 444), as well as diclofenac sodium. (Tr. 395, 398, 442). Based on his evaluations of Plaintiff, Dr. Rocca concluded in the "PHYSICAL/RESIDUAL CAPACITY QUESTIONNAIRE" that Plaintiff was "[i]ncapable of even 'low stress' jobs" due to her "pain and fatigue." (Tr. 434-435). He noted that Plaintiff could sit for only an hour and fifteen minutes before needing to get up. (*Id.*)

### D. Other Medical Providers

During the relevant time, Plaintiff also was seen at the Rothman Institute (Tr. 318-326) and by a chiropractor (Tr. 327-337) and received other routine medical care. (Tr. 340-50). To the extent any of that care is relevant to the Court's analysis it will be discussed below.

### 3. The Administrative Hearing

On July 14, 2015, the ALJ conducted an administrative hearing, at which both Plaintiff, Ms. Schwartz, and VE, Ms. Cody, testified. (Tr. 17).

### A. Plaintiff's Testimony

Plaintiff testified that she suffers from 85-90% of the time in her knees as well as pain in her shoulders, hips, and the back of her thigh (radiating down to her foot). (Tr. 16, 57-58).

She testified that she has neuropathy in her right foot and previously had pain in her wrists. (Tr. 14, 27). She cannot sit or stand for long periods of time. (Tr. 12, 17). She suffers from diabetes that is not well-controlled. (Tr. 18-19). She testified that she has "no stamina" and is "exhausted all the time" and that she is depressed and has difficulty concentrating on tasks (Tr. 19-20, 67-68).

## B.    Vocational Expert's Testimony

Ms. Cody testified as to Plaintiff's past work history which included her work as a transcriptionist and a secretary, both of which the Dictionary of Occupational Titles ("DOT") indicates are performed at the sedentary exertional level. (Tr. 74). Ms. Cody was asked by the ALJ to consider hypotheticals involving an individual of Plaintiff's age, education, and work experience and to "further assume that this individual is limited to the sedentary exertional level. There should never be pushing and pulling with the bilateral lower extremity, all postural activity is limited to not more than occasional but there shall be no climbing of ladders, ropes, or scaffolds . . . [or] stairs. There should be no more than occasional exposure to extreme temperatures, humidity, and hazards such as unprotected heights and moving machinery." (*Id.* at 74-75). The ALJ asked whether this hypothetical person could perform the past work done by Ms. Schwartz. (*Id.* at 75). Based on this information, Ms. Cody testified that Plaintiff could perform her past work as a transcriptionist and as a secretary. (*Id.*).

The ALJ then added to the hypothetical a "sit, stand option for this individual even though it's a sedentary position[] but the person can use the opportunity to stand or sit as needed." (*Id.*). She continued (*id.* at 75-76):

> So by this I mean an ability to change from a sitting to a standing position at will if desired and vice versa. That is when the person feels it may be necessary to and they are sitting and they experience back or other pain, they can stand and stretch [in] place and continue working in the standing position if desired. Similarly, while

standing if the person experiences back or other pain they can sit down to continue their work in a sitting position if desired in order to alleviate their pain. The proviso here though is that at all times they must remain on task. So they can sit and stand at will and they may be on some days standing more than they are sitting and vice versa on other days. But the question is, it is still a sedentary position with respect to lift and carry and they remain on task. Is this past work available?

Based on this information, Ms. Cody testified that "both of the past positions would be feasible with [those] additional limitations." (*Id.*).

When questioned by Plaintiff's counsel, Ms. Cody was asked whether an individual with the additional limitations in the treating physician's opinion, including that the person "were only able to sit a maximum of two hours in an eight-hour day, and stand and walk a total of two hours in an eight-hour day, and lift and carry no more than 10 pounds," be capable of performing Ms. Schwartz's past work. (*Id.* at 86). Ms. Cody testified that the person could not and "those limitations would be work preclusive." (*Id.* at 87). Upon further questioning as to whether a person who "required multiple breaks in excess of the normal employer prescribed breaks and let's say three to four breaks each lasting on average 15 to 30 minutes where they would be entirely away from the workstation lying down, resting, whatever they needed to do" would be "capable of maintaining substantial gainful activity on a full-time regular and continuing bases," Ms. Cody stated that they would not. (*Id.* at 86-87). And, similarly, when asked if a person "required four or more days absent per month on a regular and continuing basis" would be capable of performing Ms. Schwartz's past work, Ms. Cody testified that that would be "work preclusive." (*Id.* at 87).

### C. The ALJ's Findings

On August 24, 2015, the ALJ issued the following findings (Tr. 19-25):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since October 31, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments:  Dysfunction of major joint (knee), osteoarthritis (knee), diabetes mellitus, degenerative disc disease, obesity. (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she must never push or pull with the bilateral lower extremities.  All postural activities are limited to no more than occasional, but she must never climb ladders, ropes, scaffolds or stairs.  There must be no more than occasional exposure to extreme cold, extreme heat, humidity and hazards such as unprotected heights and moving machinery.

6.    The claimant is capable of performing past relevant work as a transcriptionist and secretary.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2011, through the date of this decision (20 CFR 404.1520(f)).

## III.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B.      Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v.*

*Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). Evidence that was not submitted to the ALJ can be considered, however, by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has made clear that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v.*

*Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV.   DISCUSSION

### A.      Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the Social Security Income ("SSI") program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Zirnsak v. Colvin,* 777 F.3d 607, 611-612 (3d Cir. 2014). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating

finding of nondisability when claimant is engaged in substantial gainful activity); *Zirnsak*, 777 F.3d at 611. If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *Id.* If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (20 C.F.R § 404.1520, Subpart P, Appendix 1) that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Zirnsak*, 777 F.3d at 611. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *Id.* If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Zirnsak*, 777 F.3d at 611. A claimant's RFC "is the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1); *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1545(a)(1)). "[T]he claimant always bears the burden of establishing (1) that she is severely impaired, and (2) either that the severe impairment meets or equals a listed impairment, or that it prevents her from performing her past work." *Zirnsak*, 777 F.3d at 611 (quoting *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to

any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of nondisability when claimant can adjust to other work). At this last step, ". . . the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612 (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). In other words, the Commissioner ". . . is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). In making this determination, "the Commissioner uses the RFC assessment, . . . and the testimony of vocational experts and specialist." *Zirnsak*, 777 F.3d 612. "'Ultimately, entitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy.'" *Zirnsak*, 777 F.3d 612 (quoting *Provenzano v. Comm'r*, Civil No. 10-4460 (JBS), 2011 WL 3859917, at *1 (D.N.J. Aug. 31, 2011)).

## B.     Issues Raised on Appeal

On appeal, Plaintiff raises five arguments in support of reversal for an award of benefits or of remand: (1) the ALJ erred in finding that Plaintiff did not have the medically determinable impairment of fibromyalgia, (2) the ALJ erred in failing to classify Plaintiff's depressive disorder as severe, (3) the ALJ erred in rejecting the treating physician's opinion, (4) the ALJ erred by failing to include all of Plaintiff's established limitations in her RFC or the hypothetical presented to the VE, and (5) the ALJ erred in assessing the credibility of Plaintiff. (D.I. 8).

### 1.     Determination Regarding Fibromyalgia

Plaintiff argues the ALJ erred in finding that Plaintiff's fibromyalgia was not a medically determinable impairment. In making this determination, the ALJ recited the criteria in SSR 12-2p for evaluating fibromyalgia, and then stated (Tr. 19-20):

However, the medical record specifically does not confirm that the claimant has a requisite number of tender points and there is no evidence that medical doctors have excluded other impairments as required in SSR 12-2p. Thus, this diagnosis does not comport with the requirements set forth in either SSR 12-2p or 96-4p that requires that an 'impairment' must result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Consequently, I find the diagnosis does not meet the requirements set forth by the Social Security Administration needed for the determination that fibromyalgia is a medically determinable impairment.

The ALJ, however, provided no analysis and no evaluation of any evidence. Other than the citation to one record (Exh. 8F) noting that the "medical record contains references to the diagnosis of fibromyalgia" (*id.*), no specific medical evidence was mentioned, discussed, considered, or reviewed.

While the ALJ need not explicitly refer to every exhibit in the record, a "conclusory statement without any supporting explanation or discussion warrants a remand for further proceedings, since it renders meaningful judicial review of the determination impossible. *Lawrence v. Astrue*, No. CIV.A. 08-265J, 2010 WL 545880, at *4 (W.D. Pa. Feb. 16, 2010) (citing *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119–120 (3d Cir. 2000)). That is particularly true when, as here, it appears that the ALJ overlooked or rejected certain evidence supporting a diagnosis of fibromyalgia without any explanation.

For example, while citing to just one medical record from Dr. Lenhard, the ALJ failed to recognize that Ms. Schwartz's fibromyalgia was also referenced by Dr. Rocca, a rheumatologist who examined her on multiple occasions and found tender points on examination consistent with his diagnosis. (Tr. 372-76; Tr. 390-95, 398-99, 438, 442, 467). Dr. Rocca stated that Ms. Schwartz has "tender points characteristic of fibromyalgia" and noted that her pain is "in all four quadrants." (Tr. 434). Similarly, Dr. Rocca treated Plaintiff with Lyrica, a medication indicated for treatment of fibromyalgia (Tr. 444), as well as diclofenac sodium (Tr. 395, 398, 442). Dr. Rocca also ordered laboratory testing including serum creatinine, CBC with differential/platelet, and a hepatic

function panel to rule out other impairments, and has noted no synovitis, effusion or nodules on clinical examination. (Tr. 397-98).[5]

The ALJ's failure to consider the medical records and treatment by Dr. Rocca leads the Court to conclude that the ALJ's opinion that Plaintiff's fibromyalgia was not a medically determinable impairment is not based on substantial evidence. Thus, the Court remands for further findings.

### 2.    Classification of Plaintiff's Depressive Disorder

Plaintiff argues that the ALJ erred in concluding that her "depressive disorder" was "non-severe." (D.I. 8 at 4-5). Pursuant to 20 C.F.R. § 404.1521, an "impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. The regulation provides as examples of basic work activities:  understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

Plaintiff has the burden of demonstrating that an impairment is "severe." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). To do this, Plaintiff must show that the impairment is more than "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3. The focus of the analysis must be on the limitations caused by the impairment, not the mere existence of an impairment. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (stating that a disorder is not necessary disabling; rather there must be some related functional loss). When there is evidence

---

[5]    Dr. DeCarli, the consultative physician to whom the ALJ assigned "great weight," also included in his "impressions" after examining Ms. Schwartz, the diagnosis of fibromyalgia. (Tr. 389).

of an impairment, but no evidence that it imposed any functional limitations, a finding that the impairment is not severe is appropriate. 20 C.F.R. § 404.1521(a); *Owens v. Barnhart*, 400 F. Supp. 2d 885, 891 (W.D. Va. 2005) (finding that the claimant did not have a severe mental impairment where the record showed very minimal complaints regarding any alleged mental impairment and the state agency physician concluded the impairments were nonsevere).

Here, the ALJ determined that Plaintiff's medically determinable mental impairment of depressive disorder was non-severe because it did not cause more than a minimal limitation of her ability to perform basic mental work activities. (Tr. 20-21). *See* 20 C.F.R. § 404.1521. The evidence of record supports the ALJ's step two finding. Significantly, Plaintiff sought no mental health treatment apart from a prescription for Cymbalta from Dr. Loughran, her primary care physician. (Tr. 24). *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (holding that an inconsistency between a claimant's allegations about the severity of her impairment and the actual treatment sought is probative evidence of non-disability). Further, treatment notes from Dr. Loughran during the relevant period do not document any objective findings of psychological abnormalities. (Tr. 470, 473). In addition, mental status examinations with Dr. Lenhard in February 2012, November 2012, and March 2013 showed Plaintiff to be "alert and cooperative with normal mood, affect, attention span, and concentration." (Tr. 359, 379, 430). *See Gross v. Heckler*, 785 F.2d 1163, 1165-66 (4th Cir. 1986) (stating that symptoms that are reasonably controlled by medication are not disabling). Likewise, treatment notes from Dr. Rocca fail to document subjective complaints of depression or any psychological abnormalities (Tr. 373-75, 390, 438). Thus, the ALJ's findings are supported by this record.

### 3. Weight of Medical Opinions of Treating Physician

It is not for the Court to re-weigh the medical opinions in the record. *See Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 659 (D. Del. 2008). Rather, the Court must determine whether substantial evidence exists to support the ALJ's weighing of those opinions. *See id.* "[T]he ALJ is free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak*, 777 F.3d at 614.

Treating physicians' reports, however, "should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler,* 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.). A treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli,* 247 F.3d at 42. "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id.* (citing *Newhouse v. Heckler,* 753 F.2d 283, 286 (3d Cir.1985)).

Here, the ALJ stated, she gave "great weight to the opinion evidence" from Dr. DeCarli, who had examined the Plaintiff one time. The entirety of the ALJ's decision to afford less weight to the opinion of Dr. Rocca, a treating physician was: "I give Dr. Rocca's opinion less weight because, even though he is a treating physician, it appears from the records that he saw her just

twice, or maybe three times, at most. Moreover, his opinion is not consistent with his own treating records (Exhibit 14F)." (Tr. 25).

The ALJ recognized that Dr. Rocca was a treating physician but failed to recognize his status as a specialist in rheumatology (who is board certified). (Tr. 23, 24, 25). The regulations establish that specialization is one of the factors which must be considered by the ALJ, and that "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5); *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). Because the ALJ failed to recognize that Dr. Rocca was a board-certified specialist in rheumatology, she failed to accord his opinion the additional weight to which it was entitled under the regulations. (Tr. 25).

Second, while the ALJ recognized that Dr. Rocca was a treating physician, she discounted his opinion because he purportedly "saw her just twice, or maybe three times, at most." (*Id.*). The record, however, shows that Dr. Rocca saw Ms. Schwartz on five occasions: April 4, 2012 (Tr. 375-76); May 25, 2012 (Tr. 374); June 29, 2012 (Tr. 372-73); January 4, 2013 (Tr. 390-91); and July 12, 2013 (Tr. 438-39). In addition, Dr. Rocca obtained laboratory tests (Tr. 372) and an MRI of the lumbar spine (Tr. 392) and spoke to Ms. Schwartz by telephone between regularly scheduled office visits (Tr. 440, 444).

Finally, the ALJ stated summarily that Dr. Rocca's "opinion is not consistent with his own treating records." (Tr. 25). The ALJ provides no indication as to what she believes to be inconsistent between Dr. Rocca's records and his opinion. An ALJ "cannot reject evidence for no reason or the wrong reason." *Mason v. Shalala*, 994 F.2d at 1066 (quoting *Cotter v. Harris*, 642 F.2d 700, 705, reh'g denied, 650 F.2d 481 (3d Cir. 1981)). "[A]n ALJ is not free to set his own expertise against that of physicians who present competent medical evidence." *Morales v. Apfel*,

225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999));

*Wallace*, 722 F.2d at 1155; *see also Kelly v. Railroad Retirement Board*, 625 F.2d 486, 494 (3d

Cir. 1980) ("An ALJ may not reject professional medical evidence on the basis of his own

observation").   Following *Morales*, numerous courts have reversed the decisions of ALJs who

elevated their non-expert evaluations of treatment records over the functional assessments of the

physicians who authored those records. *See, e.g., Dass v. Barnhart*, 386 F. Supp. 2d 568, 576-77

(D. Del. 2005); *Thompson v. Barnhart*, 281 F. Supp. 2d 770, 777-78 (E.D. Pa. 2003); *Schwartz v.*

*Halter*, 134 F. Supp. 2d 640, 651-52 (E.D. Pa. 2001).

Here, the ALJ appears to have substituted her lay opinion for the medical judgment of

Plaintiff's treating specialist, and her rejection of his assessment is unsupported by the evidence.

The Court remands for further findings.

### 4.    Hypothetical Presented to the VE

Plaintiff claims that the ALJ erred by presenting an inaccurate hypothetical that failed to

include all of Plaintiff's credibly established limitations. (D.I. 8 at 19).   A hypothetical question

must include all the claimant's "credibly established limitations."   *Rutherford v. Barnhart*,

399 F.3d 546, 554 (3d Cir. 2005).   Thus, a limitation supported by medical evidence, and

"otherwise uncontroverted in the record," must be included in the hypothetical. *Zirnsak*, 777 F.3d

at 614.   "However, where a limitation is supported by medical evidence, but is opposed by other

evidence in the record, the ALJ has discretion to choose whether to include that limitation in the

hypothetical." *Id.*

The hypothetical question posed by the ALJ to the VE must accurately portray the

claimant's individual physical and mental impairments. *Podedworney v. Harris*, 745 F.2d 210,

218 (3d Cir. 1984).   A hypothetical question, however, need reflect only those impairments that

are credibly established by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Plaintiff complains that the ALJ's "hypothetical omitted the limitations assessed by Dr. Rocca, the treating rheumatologist who opined that his patient was not capable of performing even sedentary work on a full-time, 8 hours per day/5 days per week basis." (D.I. 8 at 13). The ALJ was not required to include limitations that exceeded those the ALJ found supported by the record. Here, however, as noted above, the ALJ's opinions regarding Plaintiff's fibromyalgia and the opinions of Dr. Rocca were unsupported. Thus, the Court cannot tell whether the ALJ properly evaluated the medical source opinion evidence in formulating the hypothetical question that she posed to the VE or whether the ALJ's hypothetical question to the VE fairly set forth all of Plaintiff's credibly established physical functional limitations. Thus, the Court remands for further findings.

### 5. Plaintiff's Credibility

Ms. Schwartz contends that "the ALJ's adverse credibility finding was improper" because it was "erroneous and based on mistakes of fact." (D.I. 8 at 15). Credibility assessments involve a two-step process. First, Plaintiff must provide objective medical evidence showing a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms to determine the extent to which they limit Plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1529(c)(2). "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms . . . ." 20 C.F.R. § 404.1529(c)(2). Other relevant information includes what may precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 404.1529(c)(3).

The ALJ should reject claims of subjective complaints if the ALJ does not find them credible. See *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The Court, moreover, should "ordinarily defer to an ALJ's credibility determination." *Reefer v Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). Here, the ALJ explained that the objective medical evidence and Plaintiff's treatment history were inconsistent with Plaintiff's claims of completely debilitating limitations. (Tr. 24). *See* 20 C.F.R. §§ 404.1529(c)(2), (c)(3)(v). The ALJ noted that treatment records did not reflect clinical or objective findings pertaining to any impairment that would substantiate the degree of functional limitation claimed. (Tr. 24). Indeed, physical examinations during the relevant period were consistently normal showing no acute distress, no musculoskeletal deformities, normal posture and gait, and no loss of strength. (Tr. 359, 376, 379, 387-88, 430). Plaintiff also regularly denied any problems with numbness, balance, tingling, paresthesia, decreased strength, and tremors. (Tr. 357, 362, 424, 428-29, 452).

Moreover, Plaintiff's physicians have recommended that she undergo total knee arthroplasty (Tr. 467), but Plaintiff has been unwilling to undergo this procedure, which, as the ALJ pointed out, may be an indication that her condition was less limiting than she alleged. (Tr. 24). Plaintiff contends that the ALJ did not consider her explanation for choosing not to undergo total knee arthroplasty, *i.e.*, fear of post-operative complications due to diabetes mellitus. (D.I. 8 at 15). The ALJ, however, acknowledged Plaintiff's testimony, but balanced that with the record evidence, which showed that (1) Dr. Rocca encouraged her to undergo a total knee replacement and opined that her fear of surgery may be irrational (Tr. 24, 467); and (2) her diabetes has been under better control with improved A1c. (Tr. 24, 430, 470, 473). The ALJ may consider noncompliance with recommended medical treatment in the credibility assessment. *See* 20 C.F.R. § 404.1529(c)(3)(v) (stating that a claimant's lack of treatment is probative in

evaluating a claimant's allegation of disabling symptoms); *Hunter v. Barnhart*, 2006 WL 1409726, at *3 (E.D. Pa. May 17, 2006) (ALJ properly took failure to follow prescribed treatment into account in evaluating credibility).

The ALJ also noted that Plaintiff appeared to overstate her subjective complaints of pain and other symptoms to support her claim for disability. (Tr. 24). *See* 20 C.F.R. § 404.1529(c)(4) (explaining that the Commissioner may consider conflicts between a claimant's statements and other evidence of record). For example, in April 2012, Plaintiff reported that she was initially diagnosed with fibromyalgia in 2000 and had been doing poorly lately. (Tr. 375). Yet, on examination she had normal range of motion in her upper extremities, no costovertebral angle tenderness, no tenderness in her sacroiliac joints, negative straight leg raising tests, and normal sensation, coordination, gait, and muscle strength. (Tr. 24, 375-76). In addition, during appointments with Dr. Lenhard in February 2012, November 2012, and March 2013 Plaintiff denied leg pain with walking and reported that she engaged in regular exercise. (Tr. 357, 424, 428-29). Furthermore, although Plaintiff testified that her ability to concentrate is impacted by her depression, she has not sought treatment from a mental health professional and her mental status examinations have shown normal mood, concentration, and attention span. (Tr. 24, 359, 379, 430).

Although the ALJ did not find Plaintiff's allegations about her limitations entirely credible, the ALJ nonetheless credited her to the extent that she found Plaintiff limited to a range of sedentary work. (Tr. 22). The ALJ followed the controlling regulations in evaluating Plaintiff's complaints. Therefore, her decision is entitled to deference and should be affirmed.

## V.    <u>CONCLUSION</u>

For the reasons stated, the Court will grant-in-part and deny-in-part Plaintiff's motion and deny Defendant's cross-motion for summary judgment.  This matter will be remanded for further proceedings consistent with this Opinion.  An appropriate Order will issue.